UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBORAH ELAINE L.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

6:20-CV-06607 EAW

# INTRODUCTION

Represented by counsel, Plaintiff Deborah Elaine L. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 15; Dkt. 16), and Plaintiff's reply (Dkt. 17). For the reasons discussed below, the Commissioner's motion (Dkt. 16) is granted and Plaintiff's motion (Dkt. 15) is denied.

## BACKGROUND

Plaintiff protectively filed her application for SSI on August 11, 2016. (Dkt. 14 at 14, 107).[1] In her application, Plaintiff alleged disability beginning August 11, 2016. (*Id.* at 14, 221). Plaintiff's application was initially denied on October 31, 2016. (*Id.* at 14, 117-22). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Andrew J. Soltes, Jr., on December 11, 2018, and April 22, 2019. (*Id.* at 14, 45-106). On August 5, 2019, the ALJ issued an unfavorable decision. (*Id.* at 11-31). Plaintiff requested Appeals Council review; her request was denied on June 16, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 416.920(d).  If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since August 11, 2016, the application date. (Dkt. 14 at 16).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of bilateral osteoarthritis of the knees, degenerative disc disease, neuropathy, obesity, anxiety, depression, and substance abuse. (*Id.*). The ALJ further found that Plaintiff's medically

determinable impairments of gastroesophageal reflux disorder, seasonal allergic rhinitis, and iron deficiency anemia were not severe and that her claimed carpal tunnel syndrome and hypertension were not medically determinable impairments as defined in the Act. (*Id.* at 16-17).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 17). The ALJ particularly considered the criteria of Listings 1.02, 1.04, 12.04, and 12.06, as well as the effects of Plaintiff's obesity, in reaching his conclusion. (*Id.* at 17-19).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except with the additional limitations that she:

> can occasionally stoop, crouch, use foot controls, and climb stairs and ramps; can never kneel, crawl, work at unprotected heights, or climb ladders, ropes, or scaffolds; must avoid the use of heavy machinery, including motor vehicles for work purposes; and can perform unskilled low stress occupations defined as simple routine tasks, basis work-related decisions, and rare changes in workplace setting.

(*Id.* at 19). At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 23).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of document preparer, table worker, finisher, surveillance system monitor, callout operator, and addresser. (*Id.* at 23-24).

Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 25).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) the ALJ's physical RFC determination was based on a stale medical opinion and his own lay conjecture and was thus unsupported by substantial evidence, and (2) the ALJ failed to properly evaluate Plaintiff's need for an assistive device (specifically, a cane). (Dkt. 15-1 at 1). The Court is unpersuaded by these arguments, for the reasons discussed below.

### A. Physical RFC Finding

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* at 56. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . . This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-CV-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted). "Where, however, the record contains sufficient evidence

- 6 -

from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (quotations, alteration, and citations omitted).

In this case, the ALJ largely relied on the opinion of consultative medical examiner Dr. Nikita Dave in formulating Plaintiff's RFC. (*See* Dkt. 14 at 23). Dr. Dave examined Plaintiff in October of 2016 and opined that she had "moderate to marked limitations for prolonged standing, walking, climbing, squatting, kneeling, and crouching." (*Id*. at 425). The ALJ gave Dr. Dave's opinion "great weight," but noted that subsequent to his examination, Plaintiff was diagnosed with neuropathy and a lumbar impairment. (*Id*. at 23). The ALJ explained that notwithstanding these subsequent diagnoses, Plaintiff continued to exhibit "substantially intact gait, reflexes, and ranges of motion without indication of significant spasm[.]" (*Id*.). Nonetheless, the ALJ afforded Plaintiff the benefit of the doubt and assessed additional restrictions regarding foot controls, heights, postural activities, and workplace hazards. (*Id*.).

Plaintiff argues that Dr. Dave's opinion was stale and accordingly could not constitute substantial evidence for the ALJ's physical RFC assessment. "[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015). "A medical opinion may be stale if it does not account for the claimant's deteriorating condition." *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017). However, a medical opinion is not necessarily stale simply based on the passage of time. A more dated opinion may constitute substantial

evidence if it is consistent with the record as a whole notwithstanding its age. *See Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (consultative physician's opinion was not rendered stale on the basis of subsequent treatment records and the submission of additional physician's opinions where the opinions were consistent and did not evidence the plaintiff's significant deterioration); *Meiers v. Comm'r of Soc. Sec.*, No. 19-CV-71, 2020 WL 3972316, at *2 (W.D.N.Y. July 14, 2020) ("[T]ime alone does not make an opinion stale: For a medical opinion to be stale, there must be a significant period of time between the date of the opinion and the hearing date, and there also must be subsequent treatment notes indicating that the claimant's condition deteriorated over that period." (quotation and alteration omitted)).

Here, while Dr. Dave's opinion was rendered more than two years before the ALJ issued his decision, the record did not show a meaningful deterioration in Plaintiff's condition during that time period. Plaintiff did receive new diagnoses of lumbar impairment and neuropathy during the time period at issue, but the ALJ correctly noted that her functionality remained stable. For example, in January of 2019, Plaintiff was seen at Rochester General Hospital after she slipped and fell on concrete. (Dkt. 14 at 741). Despite having been involved in an acute accident, Plaintiff was able to ambulate without difficulty and had 5/5 muscle strength. (*Id.* at 741, 743; *see also, e.g., id.* at 438 (on examination in June of 2017, Plaintiff had normal gait and was "moving all 4 extremities without issue")). Further, x-rays of Plaintiff's knees taken after Dr. Dave's opinion was issued in 2016 showed an "unchanged" degenerative condition of the knees (*Id.* at 359; *see also id.* at 663, 718). The mere diagnosis of additional impairments, without evidence

of accompanying additional limitations, does not render Dr. Dave's opinion stale. *See, e.g., Christopher H. v. Comm'r of Soc. Sec.*, No. 20-CV-0878MWP, 2022 WL 282813, at *5 (W.D.N.Y. Jan. 31, 2022) ("Nor do I find that [the consultative examiner's evaluation was rendered stale by plaintiff's subsequent diagnosis of and surgery for carpal tunnel and trigger finger. . . . Medical evidence post-dating [the consultative examiner's opinion], which the ALJ considered, does not demonstrate that plaintiff's condition deteriorated after the evaluation."); *Ivey v. Comm'r of Soc. Sec.*, No. 1:19-CV-00657 EAW, 2020 WL 5046261, at *4 n.4 (W.D.N.Y. Aug. 27, 2020) (consultative examination was not stale despite new diagnosis because medical evidence of record documented associated symptoms).

It further was not error for the ALJ to afford Plaintiff the benefit of the doubt and assess additional non-exertional limitations despite the lack of support for such limitations in the medical evidence of record. The additional non-exertional limitations assessed by the ALJ are related to Plaintiff's own testimony. In particular, Plaintiff testified that she is unable to drive a car, that her feet sometimes go numb, and that her legs sometimes give out on her. (Dkt. 15 at 56-57, 61). It was within the ALJ's discretion to credit these statements by Plaintiff and impose corresponding restrictions related to working at heights, operating foot controls, and exposure to workplace hazards such as heavy machinery. *See, e.g., Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) ("Indeed, the ALJ occasionally deviated from consultative examiners' recommendations to *decrease* Ramsey's RFC based on other evidence in the record, exemplified by the ALJ's determination that Ramsey should not interact with the public. The ALJ committed no

error by determining the scope of Ramsey's RFC because that is his responsibility." (emphasis in original)); *Larson v. Comm'r of Soc. Sec.*, No. 19-cv-0116MWP, 2020 WL 5018331, *11 (W.D.N.Y. 2020) ("In assessing the additional postural, handling, and fingering limitations, the ALJ seemingly gave Larson some benefit of the doubt regarding her complaints of pain and the restrictions Larson herself claimed were associated with her [impairment].").

Plaintiff also makes a cursory argument that the ALJ impermissibly relied on his own lay opinion in determining that her claimed carpal tunnel syndrome did not constitute a medically determinable impairment, and that he compounded this error by failing to assess any limitations associated with this claimed impairment. (*See* Dkt. 15-1 at 14). This argument lacks merit. Pursuant to the Commissioner's regulations, a "medically determinable" impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.921. Here, the ALJ found that standard not satisfied, because Plaintiff was assessed with carpal tunnel syndrome in February of 2019 despite no laboratory confirmation of the relevant diagnostic criteria. (Dkt. 14 at 17). It is the proper function of the ALJ to consider whether a regulatory requirement has been satisfied in a particular case.

Moreover, the ALJ went on to find that even assuming Plaintiff's claimed carpal tunnel syndrome was a medically determinable impairment, there was no evidence of record to support the conclusion that it was severe—that is, that it "caused more than minimal functional restrictions and would be expected to last at least 12 consecutive

months." (*Id.*). Plaintiff does not meaningfully address this alternative conclusion, which on its face is supported by the record. *Cf. Lisa M. v. Comm'r of Soc. Sec.*, No. 20-CV-0178MWP, 2021 WL 3513832, at *4 (W.D.N.Y. Aug. 10, 2021) ("Nor is it the Court's job to mine the record to uncover factual support for plaintiff's contentions where the plaintiff has cited none.").

In sum, the Court finds no reversible error in the ALJ's assessment of Plaintiff's physical RFC.

### B. Failure to Include Requirement for Cane Use

The Court turns next to Plaintiff's argument that the ALJ failed to properly evaluate the evidence of record regarding Plaintiff's need for a cane. "[I]n order [for an ALJ] to find that a hand-held assistive device, such as a cane, is medically required, the record must contain medical documentation establishing the need for the device to aid in walking or standing." *Rowe v. Berryhill*, No. 1:17-CV-00208-MAT, 2018 WL 4233702, at *4 (W.D.N.Y. Sept. 6, 2018) (citing Social Security Ruling ("SSR") 96-9P, 1996 WL 374185 at *7)). In addition, "the documentation must describe the circumstances for which it is needed (*i.e.*, all the time, periodically, or only in certain situations; distance and terrain; and other relevant information)." *Id*.

Here, Plaintiff was given a prescription for a straight, adjustable cane by a physician's assistant at her orthopedist's office in December of 2016. (Dkt. 14 at 1124). She did not fill this prescription. (*Id*. at 441). Two years later, in December of 2018, she reported to Dr. Basya Herbert of the Anthony Jordan Health Center that she had previously been prescribed a cane and needed a new one. (*Id*. at 485). On examination, Dr. Herbert

observed a full range of motion and 5/5 strength in Plaintiff's extremities. (*Id*. at 487). Dr. Herbert gave Plaintiff a prescription for a cane to use "as needed." (*Id*.).

The ALJ ultimately determined that Plaintiff was not required to use a cane, noting that Dr. Dave did not find that any ambulatory aid was medically necessary and that Plaintiff "consistently had a normal gait in primary care notes" without the use of a cane. (Dkt. 14 at 23). On these facts, the Court finds no error in the ALJ's failure to incorporate use of a cane into the RFC finding. *See Gonzalez v. Comm'r of Soc. Sec.*, No. 19-CV-06230, 2020 WL 4548031, at *5 (W.D.N.Y. Aug. 6, 2020) (ALJ did not err in failing to find that the plaintiff needed a cane where "at the appointment when [plaintiff's physician] prescribed plaintiff a cane, she observed that he walked normally without an assistive device" and "[d]espite the prescription of a cane, she and other medical providers observed that he walked normally without the cane").

Further, even if the ALJ erred in failing to include the use of a cane in his RFC finding, such error was harmless. The ALJ specifically asked the VE whether the use of a cane for prolonged ambulation would preclude an individual from employment in the relevant representative occupations; the VE confirmed that it would not. (*See* Dkt. 14 at 86-87). Accordingly, remand on this basis would not be warranted in any event. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration.") (alterations and citations omitted).

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 16) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 15) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: July 11, 2022
       Rochester, New York